IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **MUSTAFA TAYFUR,** | : | Bankruptcy No. 11-26940JAD |
| Debtor, | : | Chapter 13 |
| **MUSTAFA TAYFUR,** | : | Doc. No. 62 |
| Movant, | : | |
| vs. | : | |
| **SWEPI LP, CENTRAL APPALACHIAN PETROLEUM and RONDA J. WINNECOUR,** | : | |
| Respondents. | : | |

**MEMORANDUM OPINION**

The matter before the Court is the Debtor's *Motion to Reject Oil and Gas Lease Pursuant to 11 U.S.C. §365(d)(2)*. The Debtor is a lessor of an oil and gas lease and seeks to reject his oil and gas lease as not being in the best interest of the estate due to (a) the allegedly inadequate amount of compensation received thereunder, and (b) the expectation of securing a new lease that will enable him to pay his creditors in full. This matter is a core matter pursuant to 28 U.S.C. §157(2)(A). This Memorandum Opinion constitutes this Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052. For the reasons expressed below, the *Motion to Reject Oil and Gas Lease Pursuant to 11 U.S.C. §365(d)(2)* shall be denied.

I.

The Debtor, Mustafa Tayfur, is party to an oil and gas lease dated December 28, 2005 (the "Lease"). The Lease was originally with Central Appalachian Petroleum and

subsequently assigned to East Resources in July of 2006. SWEPI LP ("SWEPI") is a successor by merger of East Resources.

Pursuant to the Lease, the Debtor granted the lessee certain rights to explore and produce oil and gas on 107 acres in Worth Township, Butler County, Pennsylvania. The primary term of the Lease is ten years "or as long thereafter as prescribed payments are made, or for as long thereafter as operations are conducted on the Leasehold in search of or production of oil, gas, or the their constituents, or for as long as a well capable of production is located on the Leasehold…" See Doc. #94, Ex. 3. The Lease provides for the Debtor to receive $3.00 per acre as delay payment. Id. At the time the Debtor entered into the Lease, he had no formal offers for the purchase of the rights transmitted under the Lease. The Lease was signed by the Debtor as Lessor but was not signed by the original lessee, Central Appalachian Petroleum.

Payments commenced timely under the Lease and have continued at the established rate of $321.00 per year. The Debtor has cashed each of the checks received from SWEPI and/or its predecessors. To date, there have not been any drilling operations on the Debtor's property. Nor has there been any production of oil or gas in Worth Township, Butler County, Pennsylvania in paying quantities.

On November 14, 2011, the Debtor filed a voluntary Chapter 13 petition. In his schedules, the Debtor listed the Lease on Schedule B indicating that he was assuming the Lease and using the proceeds to fund the chapter 13 plan.[1] In his Chapter 13 Plan dated November 22, 2011, the Debtor stated that he anticipated oil and gas payments totaling approximately $120,000 to commence in June 2012 to be used to fund the plan.

---

[1] The Court takes judicial notice of the Schedules, Statement of Affairs and Chapter 13 plans filed in this case pursuant to Fed.R. Evid. 201.

See Doc. #7. That plan was then confirmed on interim basis. On July 30, 2012, the Debtor filed an Amended Plan stating that drilling had been delayed due to the decline in gas prices and payments were expected to begin the summer of 2013.[2] It was again acknowledged by the Debtor that the payments under the oil and gas Lease would be sufficient to pay one hundred per cent of the allowed undisputed claims asserted in this bankruptcy case. An interim order confirming the plan as modified was entered on September 10, 2012.

The Debtor thereafter had a change of heart and filed the subject *Motion to Reject Oil and Gas Lease Pursuant to 11 U.S.C. § 365(d)(2)* (the "*Motion to Reject*") on February 20, 2013. Contemporaneously, an Amended Chapter 13 Plan Dated February 20, 2013 was filed stating that the Debtor was proceeding with a motion to reject the current oil and gas Lease and the Debtor would be proceeding with a new lease or sale of his rights as he had received an alleged substantial tentative offer for the oil and gas rights. Further, it was indicated that payments were expected to begin in the summer of 2014. See Doc. #75.

An objection to the *Motion to Reject* was filed by Respondent SWEPI. An evidentiary hearing was held on the *Motion to Reject*, the parties have submitted their Post-Trial Briefs and replies thereto and the matter is now ripe for determination.

**II.**

The Debtor seeks to reject the oil and gas Lease pursuant to 11 U.S.C. §365(d)(2) on the basis of an alleged tentative offer related to the subsurface rights of the Debtor's property. It is alleged that rejection of the Lease is in the best interest of the creditors as the Debtor expects to secure a new lease or sale of his subsurface rights that would pay

---

[2] The basis of the anticipated amounts or the timeframes stated in the plans is not known to the Court.

all creditors in full. Further, it is asserted that the amount paid under the current Lease is "grossly inadequate in view of the offers received by the debtor from other sources." See Doc. #62, ¶9.

Although not alleged in the *Motion to Reject*, it was further argued by the Debtor at the time of the pretrial submissions that because the Lease was signed only by the lessor, and not the lessee, it is an "at will" lease. As such, it is argued that the Lease can be terminated at any time by the Debtor. In support of this theory, the Debtor relies upon Pennsylvania Landlord/Tenant law and the Statute of Frauds.

SWEPI disputes that the Lease is subject to Landlord/Tenant law and argues that the Statute of Frauds is inapplicable. SWEPI further contends that even if the Statute of Frauds is applicable, it has produced sufficient writings to meet its burden. SWEPI also argues that the principle of estoppel should be applied to bar the Debtor from seeking to terminate the Lease. Finally, SWEPI asserts that even if this Court were to allow the rejection of the Lease, it is entitled to remain on the premises pursuant to 11 U.S.C. §365(h)(1)(A)(ii).

## III.

11 U.S.C. §365 provides that a trustee may assume or reject an executory contract or unexpired lease of the debtor. 11 U.S.C. §365(a). In this chapter 13 case, such assumption or rejection may be at any time prior to confirmation of a plan. 11 U.S.C. §365(d)(2). Although this Debtor has proposed a plan and an amended plan that have been confirmed on an interim basis, there has been no final confirmation of a chapter 13 plan in this case.[3]

---

[3] The plan and amended plan that were confirmed on interim basis included assumption of the subject Lease. The Second Amended Plan, which remains pending,

Section 365 of the Bankruptcy Code provides that an executory contract or unexpired lease may be assumed or rejected subject to the court's approval. 11 U.S.C. §365(a). The Bankruptcy Code does not set forth a standard for making a determination as to whether assumption or rejection should be authorized; however, courts have adopted the standard of the business judgment test. See e.g., In re Philadelphia Newspapers, LLC, 424 B.R. 178, 182 (Bankr. E.D. Pa. 2010); N.L.R.B. v. Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982), *aff'd* 104 S.Ct. 1188 (1984). The decision of the debtor must also be in the best interest of the estate. See Chestnut Ridge Plaza Assocs., L.P., 156 B.R. 477, 485 (Bankr. W.D. Pa. 1993).

**IV.**

In order to determine whether the Lease can be rejected pursuant to 11 U.S.C. §365, the Court first examines the Debtor's contentions that the Lease is an "at will" lease. To support his assertion that the Lease is an "at will" lease, the Debtor relies upon Pennsylvania statute 68 P.S. §250.202. That statute provides that real property leased for a term of greater than three years by a landlord to a tenant "must be in writing and signed by the parties making or creating the same, otherwise it shall have the force and effect of a lease at will only and shall not be given any greater force or effect either in law or equity . . . ." 68 P.S. §250.202.

The statutory subsection quoted above is part of Pennsylvania's Landlord and Tenant Act of 1951 found at 68 P.S. *et. seq.*. It is settled law in Pennsylvania that an oil and gas lease does not fall within the context of a landlord/tenant lease. See e.g., Rice v. Chesapeake Energy Corp., No. 2:12-cv-00391, 2012 WL 3144318, *3 (W.D. Pa. Aug. 1,

---

was filed subsequent to the *Motion to Reject Lease* and includes rejection of the Lease.

2012)("In Pennsylvania, an oil and gas lease is not presumed to carry with it principles of lease construction found in the landlord/tenant arena.")(citing Kepple v. Fairman Drilling Co., 551 A.2d 226, 230-31 (1988)); see also Derrickheim Co. v. Brown, 451 A.2d 477, 479 (Pa. Super. 1982)("[o]il and gas leases are not controlled by normal landlord and tenant law")(citing Kuntz, A Treatise on The Law of Oil and Gas, section 52.1 (1978)).

The Debtor also relies upon the Pennsylvania Statute of Frauds found at 33 P.S. §1. This statute provides that all "leases, estates, interests . . . not put in writing, and signed by the parties so making or creating the same, shall have the force and effect of leases or estates at will only . . . .". 33 P.S. §1.  The Debtor asserts that the failure of the lessee to affix a signature on the lease renders the lease to be one that is not for a term of years, but rather one that is "at will" only.

Upon closer examination, this Court concludes that the Debtor's reliance upon the Statute of Frauds in this instance is unavailing.  The Statute of Frauds provides that an agreement for the sale of real estate will not be enforced unless it is in writing and signed by the party to be charged. See Fannin v. Cratty, 480 A.2d 1056, 1058 (Pa. Super. 1984). Its purpose is to "prevent assertions of verbal understandings and thus to obviate the opportunity for fraud and perjury." Id. (citing Brotman v. Brotman, 46 A.2d 175 (Pa. 1946); Manley v. Manley, 357 A.2d 641 (Pa. Super. 1976)).

The Court finds the case of Deutsche Nat'l Trust Co. v. Evans, 421 B.R. 193 (W.D. Pa. 2009) to be instructive. In Evans, the debtor sought to invalidate a recorded mortgage that was signed by the husband only and not the wife.  On appeal, the district court examined whether the entireties presumption applied and whether the Statute of Frauds could be used to invalidate the mortgage.  It was determined that because there was no allegation of fraud or perjury the Statute of Frauds was inapplicable.  Specifically, the

court stated that "where perjury or fraud is impossible, there is no room for the statute . . ." Id. at 199 (quoting Schuster v. Pennsylvania Turnpike Comm'n, 149 A.2d 447, 451, n.11 (Pa. 1959)). The court found no fraud or perjury was possible as the wife had received the benefit of the mortgage. Id. at 201.

  The Debtor attempts to distinguish Evans on the grounds that the district court found that the bankruptcy court decision incorrectly relied upon cases concerning leases instead of mortgages which is what was at issue. However, the Debtor's focus on the mortgage versus lease issue in Evans misses the mark. The district court determination in Evans was based on the entireties presumption which it held applicable to render the mortgage enforceable. Having determined that the mortgage was enforceable, the district court in Evans found that it was not rendered unenforceable by the Statute of Frauds as no fraud or perjury was involved in the transaction. In addition, the non-signing party in Evans acknowledged receipt and benefit of the mortgage transaction at issue.

  In the instant case, as in Evans, there is no allegation by the Debtor of fraud or perjury concerning the Lease. Indeed, the party here asserting the Statute of Frauds is the Debtor, who signed the Lease instrument. As the Debtor has signed the Lease and is the party to be bound by it, the Debtor now appears to take the inconsistent position in these proceedings by seeking to disavow the Lease even though it is not argued that the lessee has committed any fraud or perjury concerning the Lease. Simply stated, this is not a situation involving an oral conveyance and in the absence of perjury or fraud, the Statute of Frauds is inapplicable.

  The fact of the matter is that the Debtor is attempting to use the Statute of Frauds to disengage himself from an agreement that he no longer finds advantageous. He appears to now have buyer's remorse over the Lease some eight years later as a result of

the recent Marcellus Shale activity in the Western Pennsylvania region. However, the Statute of Frauds cannot be used as a sword instead of a shield. The Statute of Frauds has been described to shield "persons with interest in land from being deprived of those interests by perjury, not to arm contracting parties with a sword they may use to escape bargains they rue." Flight Systems, Inc. v. Electronic Data Systems Corp., 112 F.3d 124, 128 (3d Cir. 1997) (citing Fannin v. Cratty, 480 A.2d 1056, 1059 (Pa. Super. 1984)); see also Shafer v. Range Resources-Appalachia, LLC, No. 2-10-cv-1142, 2011 WL 677479, *5 (W.D. Pa. Feb. 11, 2011). To use the Statute of Frauds as a sword rather than a shield would be an impermissible contravention of its purpose. Flight Systems, 112 F.3d at 128.

Moreover, even if the Debtor was somehow properly raising the statute as a shield, the Court would find the Debtor to be estopped from asserting the statute regarding the Lease. An admission under oath that a contract has been formed serves the purpose of the Statute of Frauds and affords any agreement between parties full force and effect. Id. The Debtor testified at the evidentiary hearing that he signed the Lease; that he had received and accepted the payments from SWEPI and its predecessors and cashed the checks that were received. In fact, the checks have been received and accepted over the course of an approximate eight year period.[4]

Even if the Statute of Frauds had been properly raised, it may be satisfied by the production of writings. Id. Courts are to be satisfied with some note or memorandum sufficient to show that fraud will not be consummated by enforcing a particular

---

[4] In addition, as previously noted, there has been no allegation of fraud or perjury. It was plainly indicated at the hearing by the Debtor that after signing this Lease he saw what others were getting paid and he thought he should get rid of the Lease at issue and get a better one. See Doc. # 108, Tr. 14:11-16. The basis for seeking rejection of the Lease is clearly not for reasons of fraud or perjury.

agreement. Id. citing In re Estate of Beeruk, 241 A.2d 755, 758 (Pa. 1968). The Third Circuit Court of Appeals has summarized what writings must be produced regarding a lease to satisfy the Statute of Frauds:

> [T]he statute of frauds can be satisfied by several writings if at least one writing is signed by the party to be charged and refers to the unsigned writing or it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings. *See* Target Sportswear, 474 A.2d at 1147 (citing Fleming v. Strayer, 163 Pa. Super. 607, 63 A.2d 122, 124 (1949)). Because the statute of frauds pertaining to leases, 68 Pa. Stat. Ann. §250.202, requires that a lease be signed by both landlord and tenant, [the movant/plaintiff] must produce writings signed by both parties, *see* Flomar Corp. v. Logue, 418 Pa. 181, 210 A.2d 254, 255 (1965), although both signatures need not appear on the same writing. Where the writings produced consist of an offer and acceptance, both writings must pertain to the same terms without modification. Target Sportswear, 474 A.2d at 1149-50 (quoting 37 C.J.S. Statute of Frauds §180(c)).

112 F.3d at 128 (footnote omitted).

Several documents were introduced that would meet the requirements of the writings. For example, the Lease itself, signed by the Debtor, was introduced along with a Realty Transfer Tax Statement that reflected information about both lessor and lessee. See Doc. #94, Ex. 3. There were numerous examples of the checks submitted to the Debtor for annual delay rental payments that showed accompanying receipt documentation sent by the lessee indicating the terms of the Lease. The Debtor acknowledged these payments by signing and dating receipts for the checks and accompanying statements. See Doc. #94, Ex. 8. Also introduced was a letter from the Lease Administrator of East Resources, Inc., successor to Central Appalachian, to the Debtor which references the Lease, advises of the assignment to it, and requests a W-9 form. See id. at p. 11. Therefore, even if the Statute of Frauds was somehow determined to be applicable, SWEPI has shown that sufficient writings exist that would satisfy the

statute.

In his Reply Brief to SWEPI's Post-Trial Brief, the Debtor raises the new and additional argument that the assignments of the Lease are invalid as being unsigned. This argument was not raised either prior to or at the evidentiary hearing. Nevertheless, even if this Court were to consider this recent argument, the Debtor has failed to convince the Court that the assignments are unenforceable. The Court reaches this conclusion because cases relied upon by the Debtor to support this new theory are distinguishable.

The Debtor cites the case of Midland Gas Co. v. Jefferson County Gas Co., 85 A. 853 (Pa. 1912) for the propositions that no lease arose whether by estoppel or otherwise where payments to an oil and gas lessor do not establish a contract if there is no signature on the written assignment to the lessee— even though lessee has induced the lessor into believing that a valid assignment existed. In the instant case before the Court however, there is a signed written assignment agreement between Central Appalachian Petroleum, the original lessee, and East Resources. See Doc. #94, Exs. 6, 7. In addition, there has been no allegation of inducement on the part of any of the lessees. Thus, Midland Gas is inapplicable.

Also raised for the first time post-trial is the Debtor's assertion that the Lease has been surrendered. Cited for this proposition is the case of Clark v. Wright, 166 A. 775 (Pa. 1933) in which a lessor was permitted to enter into a new lease where the original lessee was found to have abandoned the premises. In Clark, the lessee ceased making the required payments under the lease. In the matter *sub judice*, no such abandonment has been alleged and all lessees have maintained their monetary obligations under the terms of the Lease. The Court therefore finds Clark to be inapplicable and distinguishable.

The Debtor also now contends that Brown v. Haight, 255 A.2d 508 (1969), provides that a lack of production creates an "at will" lease capable of termination. In Brown, it was not the lack of production that resulted in the tenancy at will. Rather it was that the lease was, in fact, a fee simple determinable with the interest reverting to the grantor. Pursuant to the lease, when the gas was not produced in paying quantities after the required term of years, the property automatically reverted to the grantor. The lessee remained on the property despite the reversion and was therefore found to be a tenant at will. The term in the Lease at issue in this case before the Court has not yet expired so there is no remainder beyond the lease terms by SWEPI. Additionally, as will be discussed below, this Lease is not a fee simple determinable as in Brown.

## V.

Having determined that the Statute of Frauds does not render the Lease invalid, the Court now turns its attention to the nature of the Lease itself. Whether or not section 365 is even applicable depends on the nature of the interest at issue. Although assumption or rejection pursuant to the *Motion to Reject* assumes that the Lease is, in fact, an unexpired lease under 11 U.S.C. §365, closer examination is required before such a conclusion can be drawn.

The determination of the interest that is created by an oil and gas lease is a matter of state law. See In re Powell, 482 B.R. 873, 877 (Bankr. M.D. Pa. 2012)(citing Matter of Topco, Inc., 894 F.2d 727, 740, n.17 (5th Cir. 1990); In re Harris Pine Mills, 862 F.2d 217 (9th Cir. 1988)). Therefore, in order to decide whether an oil and gas lease is an unexpired lease, the nature of the estate created by state law regarding an oil and gas lease must be determined.

The Court notes that at the outset of this review that it has been observed by the

Pennsylvania Supreme Court that "[t]he traditional oil and gas 'lease' is far from the simplest of property concepts." Brown v. Haight, 255 A.2d 508, 510 (Pa. 1969). Pennsylvania recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to surface support. See Hetrick v. Apollo Gas Co., 608 A.2d 1074, 1077 (Pa. Super. 1992)(citations omitted). An owner can convey a portion or all of the estates. Id. at 1078. Pennsylvania adopts the theory that a landowner owns the oil and gas that is in place under the land.[5] Thus, in Pennsylvania, an oil and gas lease, despite its title, may in actuality be a conveyance of a mineral estate. Id.; see also Lesnick v. Chartiers Natural Gas Co., 889 A.2d 1282, 1284 (Pa. Super. 2005)(citing Duquesne Natural Gas Co. v. Fefolt, 198 A. 2d 608 (1964)). If the lease is a conveyance of a mineral estate, i.e. a fee interest, as opposed to a true lease, then 11 U.S.C. §365 is not applicable.

It is therefore necessary to look to the document itself to determine the nature of the particular conveyance. Here, the language in what is termed the Leasing Clause provides that the Lessor "leases exclusively to Lessee all the oil and gas...underlying the land herein leased, together with such exclusive rights as may be necessary or convenient for Lessee, at its election, to explore for, develop, produce, measure and market production from the Leasehold . . . and such rights shall survive the term of this agreement for so long thereafter as operations are continued . . . ."(Emphasis added). Doc. #94, Ex. 3. There is no general term of conveyance such as grant, demise, or convey. The Lease provides for an exclusive right to explore for oil and other minerals for a certain term plus "so long thereafter." Such language has been held to be more consistent with

---

[5] The theory that a landowner owns the oil and gas that is in place under the land is known as "ownership in place". Pennsylvania is considered to be an "ownership in place" state.

a lease rather than a conveyance of the mineral rights. See Hetrick, 608 A.2d at 1078-1079 (citing Appeal of Baird, 6 A.2d 306 (Pa. 1939)).

Furthermore, the application of a Pennsylvania oil and gas lease in the context of a motion to reject unexpired lease under 11 U.S.C. §365 was recently addressed in the case of In re Powell, 482 B.R. 873 (Bankr. M.D. Pa. 2012). In Powell, the debtor sought to reject an oil and gas lease pursuant to 11 U.S.C. §365(d)(4) on the basis that it was undervalued. The lessee objected on the grounds that the lease was not an executory contract or an unexpired lease and therefore could not be rejected. The bankruptcy court looked to the recent Pennsylvania Supreme Court case of T.W. Phillips Gas and Oil Co. v. Jedlicka, 42 A.3d 261 (Pa. 2012) to determine the nature of the lessee's interest.

In Jedlicka, the "unique characteristics" of an oil and gas property were examined. The issue in Jedlicka was an appropriate test to determine whether an oil and gas lease was producing "in paying quantities." The court stated that title conveyed in an oil and gas lease is inchoate and is initially for the purpose of exploration. That court concluded that a lessee's interest vests when gas is produced. A fee simple determinable is then created. If development is unsuccessful, no estate vests in the lessee. Id. at 267; see also Hite v. Falcon Partners, 13 A.3d 942, 945 (Pa. Super. 2011); Jacobs v. CNG Transmission Corp., 332 F.Supp. 2d. 759 (W.D. Pa. 2004).

The Powell court then looked to whether gas had been produced at the time of the bankruptcy petition to determine if the lessee's interest had vested. Id. at 877 ("Vesting is critical to the analysis, since the 'vesting' is that of a fee simple determinable which terminates the executory nature of the contract and takes this interest, be it license, lease, or other and converts it to a real property interest in the mineral estate." (footnote omitted)). No gas had been produced as of the petition date in Powell, leading the court

to find that no fee simple determinable had yet been created.  Accordingly, the court found the agreement could be either an executory contract or unexpired lease subject to 11 U.S.C. §365.  Id. at 878.

The Powell court then relied upon 11 U.S.C.§365(m) to find that the oil and gas lease was an agreement to use real property and therefore fell within the bankruptcy definition of a lease.  11 U.S.C. §365(m) provides that "for purposes of this section 365 . . . leases of real property shall include any rental agreement to use real property."  11 U.S.C. §365(m).  As a result of determining that the lease was an unexpired lease, the Powell court did not find a determination of whether the lease was an executory contract to be critical.

In the instant case, SWEPI does not appear to object the characterization of the Lease as an unexpired lease subject to 11 U.S.C. §365.  As in the Powell case, there has been no production pursuant to the present Lease.  Pursuant to Jedlicka and Powell, absent production, there has been no vesting of title.  Absent such vesting, SWEPI's interest would remain an inchoate one.  Accordingly, the Lease would not result in a conveyance of property and 11 U.S.C. §365 would be applicable.

**VI.**

Having determined that the Lease is subject to assumption or rejection pursuant to 11 U.S.C. §365, the Court now turns to whether or not such rejection should be permitted.  The Debtor testified that he sought to reject the lease because it was under market value.  He testified that he saw a copy of a neighbor's lease that provided for $3,250 per acre to lease and 18 percent royalties upon production.  See Doc. #108, Tr. 11-12.  Harry Klowdowski, special counsel to the Debtor, testified that the current standard lease that is entered into in the area of the Debtor's property was between three

and four thousand dollars per acre as a bonus for a five year term. See id. Tr. 27:19-24. Mr. Klowdowski further stated that the market has generally been at something closer to sixteen or seventeen per cent royalty and a shut-in royalty of between ten and twenty dollars an acre and a term of five years. See id. Tr. 27:25 - 28:7. No documentary evidence was presented regarding these estimations.

In fact, the only evidence of a prospective alternative arrangement available to the Debtor was a letter from Thomas McMaster, a landman for an entity known as Bounty Minerals. In the letter, Mr. McMaster wrote regarding the "possible sale" of the Debtor's mineral rights. The letter indicates that a proposal had been prepared for the Debtor and invites the Debtor to contact Mr. McMaster for further discussion. See Doc. # 94, Ex. 2. The Debtor testified that in discussions with Mr. McMaster, he invited the Debtor to suggest a contractual amount that he was seeking to obtain. However, when Mr. McMaster called, the Debtor never gave him an offer of any specific dollar amount. No written offers were then made by Mr. McMaster to the Debtor. Therefore, although the Debtor contends that rejection of the Lease would allow him to enter into a more lucrative arrangement, there was no evidence introduced at trial that there was interest on the part of any entity beyond the discussion stage. No firm offers were received or presented.

SWEPI called Bobby Hebert as a witness, a land representative for SWEPI who manages aspects of land transactions in several counties— including Butler County where the subject Lease is located. Mr. Hebert testified that, assuming the Debtor was successful in rejecting the Lease, other production companies would be unlikely to find the property attractive. He showed that SWEPI owns a majority of the leaseholds around the property. Further, there is a state park located below the Debtor's property that he indicated makes drilling for production more difficult. Given the horizontal drilling angle

and acreage required for a Marcellus Shale well, Mr. Hebert opined that in order for another producer to purchase the Lease, it would require an arrangement with SWEPI. SWEPI would be under no obligation to coordinate with another producer to allow for sufficient acreage or pipeline access. Mr. Hebert opined that using the Debtor's example of market values, an expenditure of "a couple hundred thousand dollars" would be required to buy the lease - one that sits in the middle of an area dominated SWEPI. See Doc. #108, Tr. 56-58.

Based on the testimony of the Debtor and witnesses, the Court finds that the Debtor did not meet his burden of showing that the rejection of the lease would be in the best interest of the estate. There was no evidence that the Debtor had an alternative firm offer regarding the mineral rights or was likely to obtain one. The evidence also showed little likelihood that another production company would lease the property in light of its location and the surrounding acreage that was already leased by SWEPI.

It also appears that the Debtor misconstrues what would be the result of the sought after rejection of the Lease with SWEPI. The obligations of the Debtor and the rights of the lessee under the lease "do not just vanish because a debtor has rejected the lease. The leasehold interest remains intact and the lease remains operative between the parties." In re Chestnut Ridge Plaza Assocs., L.P., 156 B.R. 477, 485 (Bankr. W.D. Pa. 1993). In addition, section 365(h) provides a lessee with options where an unexpired lease has been rejected. Pursuant to 11 U.S.C. §365(h)(1)(A)(ii), a lessee may retain its rights under the lease for the balance of the lease term and any applicable extensions. Thus, SWEPI could opt to remain in possession pursuant to the term of the Lease. Absent other provisions of the Lease Term going into effect, the Lease will expire by its term on December 28, 2015. Even if the Lease is rejected, SWEPI would be within its

rights to remain in possession (assuming compliance with its obligations under the Lease). Accordingly, the Court is not convinced that rejection would be in the best interest of the estate.

## VII.

For the above reasons, the Court finds that the Landlord/Tenant law does not apply to the subject oil and gas lease. The Lease is not an "at will" lease. Nor can it be rendered invalid pursuant to the Statute of Frauds. The Debtor has not shown that rejection of the oil and gas lease would be in the best interest of the estate. Therefore, the *Motion to Reject* shall be denied. A separate order shall be entered.


Dated: February 26, 2014            /s/ Jeffery A. Deller
                                    JEFFERY A. DELLER
                                    Chief U.S. Bankruptcy Judge


case administrator to serve:

Mary Bower Sheats, Esq.
Kirk Burkley, Esq.
Ronda J. Winnecour, Esq., Chapter 13 Trustee
Office of the United States Trustee